## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and the PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:22-cv-00051-NR |
| v. | ) ) | CONSENT DECREE |
| WEST PENN POWER COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ................................................................................................... 3
II.     APPLICABILITY ...................................................................................................................... 3
III.     DEFINITIONS ........................................................................................................................... 4
IV.     CIVIL PENALTY ...................................................................................................................... 6
V.     GENERAL COMPLIANCE REQUIREMENTS ..................................................................... 8
VI.     INJUNCTIVE RELIEF ........................................................................................................... 10
VII.     REPORTING REQUIREMENTS ........................................................................................... 13
VIII.     STIPULATED PENALTIES .................................................................................................... 15
IX.     FORCE MAJEURE ................................................................................................................. 20
X.     DISPUTE RESOLUTION ....................................................................................................... 22
XI.     INFORMATION COLLECTION AND RETENTION ........................................................... 25
XII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................................ 27
XIII.     COSTS ..................................................................................................................................... 29
XIV.     NOTICES ................................................................................................................................. 29
XV.     EFFECTIVE DATE ................................................................................................................. 31
XVI.     RETENTION OF JURISDICTION ........................................................................................ 31
XVII.     MODIFICATION .................................................................................................................... 31
XVIII.     TERMINATION ...................................................................................................................... 32
XIX.     PUBLIC PARTICIPATION .................................................................................................... 32
XX.     SIGNATORIES/SERVICE ...................................................................................................... 33
XXI.     INTEGRATION ...................................................................................................................... 33
XXII.     FINAL JUDGMENT ............................................................................................................... 34
XXIII.     APPENDICES ......................................................................................................................... 34

WHEREAS, Plaintiffs the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the Pennsylvania Department of Environmental Protection ("PADEP") have filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant West Penn Power Company ("West Penn" or "Defendant") violated Sections 309(b) and (d) of the Federal Water Pollution Control Act (the "Act"), 33 U.S.C. §§ 1319(b) and (d), and Sections 301 and 307 of the Pennsylvania Clean Streams Law ("The Clean Streams Law"), 35 P.S. §§ 691.301 and 691.307.

WHEREAS, pursuant to Section 402 of the Act, 33 U.S.C. § 1342, and pursuant to Section 307 of The Clean Streams Law, 35 P.S. § 691.307, in 1993 Defendant was issued National Pollutant Discharge Elimination System ("NPDES") Permit No. PA0002895 ("Mingo NPDES Permit") for the Mingo Landfill, associated with the now-retired, coal-fired Mitchell Power Plant located in Union Township, Washington County, Pennsylvania (the "Mingo Facility").

WHEREAS, the Complaint alleges that Defendant violated boron effluent limitations contained in the Mingo NPDES Permit applicable to discharges from Outfall 006.

WHEREAS, on January 27, 2021, PADEP issued Defendant Water Quality Management Permit 6319202 authorizing Defendant under state law to construct a temporary discharge pipeline and permanent discharge pipeline, both of a length of approximately 1,100 feet, to a discharge point located in Peters Creek designed to eliminate violations of boron effluent limitations at Outfall 006 at the Mingo Facility.

WHEREAS, on September 14, 2021, Defendant completed construction of the permanent discharge pipeline authorized by Water Quality Management Permit 6319202 and on August 27, 2021, the Department issued a renewal of the Mingo NPDES Permit authorizing the discharge of

treated industrial wastewater from the Mingo Facility to Peters Creek.

WHEREAS, pursuant to Section 402 of the Act, 33 U.S.C. § 1342, and pursuant to Section 307 of The Clean Streams Law, 35 P.S. § 691.307, Defendant was issued NPDES Permit No. PA0091740 ("Springdale NPDES Permit") for the Springdale Landfill, associated with the now-retired, coal-fired Springdale Power Plant formerly located in Frazer Township, Allegheny County, Pennsylvania (the "Springdale Facility").

WHEREAS, the Complaint alleges that Defendant violated boron effluent limitations contained in the Springdale NPDES Permit applicable to discharges from Outfall 001 at the Springdale Facility.

WHEREAS, on January 27, 2021, PADEP issued Defendant Water Quality Management Permit 0294202 authorizing Defendant under state law to construct a new wetland treatment system and a discharge pipeline to relocate the Springdale Facility Outfall 001 from Riddle Run to the Allegheny River near River Mile Index 17.8, which facilities are designed to eliminate permit exceedances of boron effluent limitations at current Springdale Facility Outfall 001.

WHEREAS, on August 9, 2021, PADEP amended Water Quality Management Permit 0294202, now denoted as Permit Number 0294202-A4.

WHEREAS, Defendant does not admit any liability to the United States or PADEP arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Plaintiffs and Defendant (the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or

admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367 and Section 309(b) of the Act, 33 U.S.C. § 1319(b), and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the Act, 33 U.S.C. § 1319(b), because it is the judicial district in which Defendant is doing business and in which the violations alleged in the Complaint occurred.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, and without admitting any liability to the United States or PADEP arising out of the transactions or occurrences alleged in the Complaint, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b) and pursuant to Sections 601 and 605 of The Clean Streams Law, 35 P.S. §§ 691.601 and 691.605.

## II.    APPLICABILITY

3.      The provisions of this Consent Decree apply to and are binding upon the United States, PADEP, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facilities, collectively or individually, whether in compliance with the procedures of this Paragraph or otherwise, shall

relieve Defendant of its obligations to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 3, the United States Department of Justice and PADEP, in accordance with **Section XIV** (Notices). Any attempt to transfer ownership or operation of the Facilities without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.      DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Act" shall mean the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*;

b.      "The Clean Streams Law" shall mean the Act of June 22, 1937, P.L. 1987,

*as amended,* 35 P.S. §§ 691.l-691.1001;

    c.  "Complaint" shall mean the complaint filed by the United States and PADEP in this action;

    d.  "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto listed in **Section XXIII**;

    e.  "Date of Lodging" shall mean the date on which the United States lodges this Decree, as a record with the Court, in the action.

    f.  "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or Pennsylvania state holiday, the period shall run until the close of business of the next business day;

    g.  "Defendant" shall mean West Penn Power Company;

    h.  "Discharge Monitoring Report" or "DMR" shall mean the monthly report submitted by Defendant to PADEP pursuant to its NPDES Permits and, for boron limits, based on samples required to be taken in accordance with approved test procedures under 40 C.F.R. Part 136;

    i.  "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

    j.  "Effective Date" shall have the definition provided in **Section XV**;

    k.  "Facilities" shall mean collectively the Mingo Facility and the Springdale Facility;

    l.  "Mingo Facility" shall mean the Mingo Landfill, located in Union Township, Washington County, Pennsylvania owned or otherwise operated by Defendant or its

direct or indirect subsidiaries during the term of this Decree;

    m.  "NPDES Permit" shall mean a state-issued or federal-issued permit issued pursuant to the National Pollutant Discharge Elimination System as defined in 40 C.F.R. § 122.2 for either the Mingo Facility or the Springdale Facility;

    n.  "Outfall" shall mean an NPDES Permit discharge point;

    o.  "PADEP" shall mean the Pennsylvania Department of Environmental Protection and any of its successor departments or agencies;

    p.  "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

    q.  "Parties" shall mean the United States, PADEP and Defendant;

    r.  "Section" shall mean a portion of this Decree identified by a Roman numeral;

    s.  "Springdale Facility" shall mean the Springdale Landfill, located in Frazer Township, Allegheny County, Pennsylvania owned or otherwise operated by Defendant or its direct or indirect subsidiaries during the term of this Decree; and,

    t.  "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

  8.  In settlement of the claims alleged in the Complaint, Defendant shall pay a civil penalty of $610,000 to be split evenly between the United States and PADEP.   Within 30 Days after the Effective Date, Defendant shall pay the sum of Three Hundred Five Thousand Dollars and No Cents ($305,000.00) as a civil penalty, together with interest accruing from the date on

which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.

9.      Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Western District of Pennsylvania promptly after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> James A. Meade, Esq.
> FirstEnergy Service Company
> West Penn Power Company
> Corporate Counsel
> 800 Cabin Hill Drive
> Greensburg, PA 15601
> jmeade@firstenergycorp.com
> Office:  (724) 838-6965

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with **Section XIV** (Notices).

At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to EPA via email to the U.S. EPA Regional Hearing Clerk at R3_Hearing_Clerk@epa.gov; and (iii) to the United States via email or regular mail in accordance with **Section XIV**.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States et al. v.*

*West Penn Power Company*, and shall reference the civil action number, CDCS Number and DOJ case number 90-5-1-1-11894.

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or **Section VIII** (Stipulated Penalties) in calculating its federal or State or local income tax.

11.     No later than March 31, 2022, Defendant shall pay a civil penalty of Three Hundred Five Thousand Dollars and No Cents ($305,000.00) to PADEP.  The civil penalty payment shall be made by corporate check or the like made payable to the Clean Water Fund. All checks should be sent to the Compliance Specialist, Clean Water Program, Department of Environmental Protection, 400 Waterfront Drive, Pittsburgh 15222-4745.

## V.     GENERAL COMPLIANCE REQUIREMENTS

12.     Except as expressly set forth herein, this Consent Decree in no way affects or relieves Defendant of its responsibility to comply with applicable federal, state, and local laws, regulations, and permits.

13.     Defendant shall perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, and permits. This Consent Decree is not a permit issued pursuant to any federal, state, or local statute or regulation.

14.     Approval of Deliverables.  After review of any plan, report, or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA after consultation with PADEP shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

15.     If the submission is approved pursuant to **Paragraph 14(a)**, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part pursuant to **Paragraph 14(b) or (c)**, Defendant shall, upon written direction from EPA after consultation with PADEP, take all actions required by the approved plan, report, or other item that EPA after consultation with PADEP determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under **Section X** (Dispute Resolution).

16.     If the submission is disapproved in whole or in part pursuant to **Paragraph 14 (c) or (d)**, Defendant shall, within 45 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding **Paragraphs 14 and 15**.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding **Paragraph 15**.

17.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA after consultation with PADEP may again require Defendant to correct any deficiencies, in accordance with **Paragraphs 14 through 16**, subject to Defendant's right to invoke Dispute Resolution and the right of EPA and PADEP to seek stipulated penalties as provided in **Paragraphs 18** and **Section VIII** (Stipulated Penalties).

18.     Any stipulated penalties applicable to the original submission, as provided in **Section VIII** (Stipulated Penalties), shall accrue during the 45-day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material

breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

19.     Permits.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions reasonably necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of **Section IX** (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete and accurate applications and has taken all other actions reasonably necessary to obtain all such permits or approvals.

## VI.     INJUNCTIVE RELIEF

### A.     Operation of New Mingo Landfill Pipeline

20.     Defendant shall operate the new permanent pipeline ("Mingo Landfill Pipeline") to carry effluent that was discharged from Outfall 006 at the Mingo Landfill to a new discharge point at Peters Creek River Mile Index 14.33 at latitude 40 14' 45.09" and longitude 80 01' 8.30." ("New Mingo Discharge Location"), as set forth in the Water Quality Management Permit 6319202 and the renewed Mingo NPDES Permit.  Defendant shall comply with the requirements in **Paragraph 21** of this Consent Decree, which contains the relevant requirements for the Mingo Landfill Pipeline that are enforceable under this Consent Decree.  In the event of any appeal or challenge to the final issued renewed Mingo NPDES Permit to the Pennsylvania Environmental Hearing Board by a non-party to this Consent Decree, the implementation requirements set forth in this Paragraph shall remain in full force and effect, notwithstanding the

existence of the permit appeal, unless a Supersedeas is issued by the Environmental Hearing Board of the underlying permit requirement(s).

21.    <u>Mingo Landfill Pipeline Compliance Requirements</u>.  No later than the Date of Lodging, Defendant shall operate the Mingo Landfill Pipeline to the New Mingo Discharge Location in compliance with the discharge limits for boron in the Renewed Mingo NPDES Permit. This requirement is a separately enforceable requirement of this Consent Decree subject to Stipulated Penalties (**Section VIII**) for non-performance.

22.    <u>Use of Contractors by Defendant</u>.  Defendant shall be responsible for ensuring that its contractors and subcontractors perform any activities related to operation of the Mingo Landfill Pipeline contemplated herein in accordance with this Consent Decree.

**B.    Springdale Landfill Pipeline Construction and Creation of New Discharge Point**

23.    Defendant shall construct and operate a new pipeline (the "Springdale Landfill Pipeline") to carry effluent that currently is discharged from Outfall 001 at the Springdale Landfill to a new discharge point at Allegheny River Mile Index 17.7 at latitude 40 32'49.2" and longitude 79 45'57.6." ("New Springdale Discharge Location"), as set forth in Water Quality Management Permit 0294202-A4.  Defendant shall comply with the requirements and timeline set forth in the Table at **Paragraph 24** of this Consent Decree, which contains the relevant requirements for the Springdale Landfill Pipeline that are enforceable under this Consent Decree. The New Springdale Discharge Location set forth above is included in the renewed NPDES Permit (No. PA0091740) for the Springdale Facility, a draft of which is attached hereto as **Appendix A** ("Renewed Springdale NPDES Permit").  Defendant agrees not to appeal the final issued Renewed Springdale NPDES Permit as long as the effluent limitations and other

conditions in the final issued Renewed Springdale NPDES Permit are the same as or less stringent than those effluent limitations and conditions set forth in **Appendix A**. In the event of any appeal or challenge to the final issued Renewed Springdale NPDES Permit to the Pennsylvania Environmental Hearing Board by a non-party to this Consent Decree, the implementation requirements set forth in this Paragraph shall remain in full force and effect, notwithstanding the existence of the permit appeal, unless a Supersedeas is issued by the Environmental Hearing Board of the underlying permit requirement(s).

24.    Springdale Landfill Pipeline Compliance Milestones. The following implementation requirements of the Springdale Pipeline are each separately enforceable requirements of this Consent Decree subject to Stipulated Penalties (**Section VIII**) for non-performance:

| Requirement | Deadline |
| --- | --- |
| 1. Commence construction of the Springdale Landfill Pipeline and Associated Structures. | Within ninety (90) Days of Issuance of the final Renewed Springdale NPDES Permit. |
| 2. Complete construction of the Springdale Landfill Pipeline and Associated Structures. | Within thirty-six (36) Months of Issuance of the final Renewed Springdale NPDES Permit. |
| 3. Operation of the Springdale Landfill Pipeline to the New Springdale Discharge Location in compliance with the discharge limits for boron in the Renewed Springdale NPDES Permit. | No later than two (2) months after completion of Construction. |

25.    Use of Contractors by Defendant. Defendant shall be responsible for ensuring that its contractors and subcontractors perform construction and operation of the Springdale Landfill Pipeline contemplated herein in accordance with this Consent Decree.

**C.      Collection of In-stream Boron Concentration Data For Peters Creek**

26.      Within 90 days of the Effective Date of the Consent Decree, Defendant shall submit to EPA and PADEP, for review and approval pursuant to **Paragraphs 14-18** of this Consent Decree, a boron sampling plan for the Mingo Landfill Pipeline discharge that shall, at a minimum require: (1) two full years of flow monitoring for the new outfall and for Peter's Creek (immediately upstream or downstream of the new outfall); (2) flow monitoring for the new outfall must be collected first and then at the Peter's Creek location as soon as reasonably practicable, but within 60 minutes of flow monitoring for the outfall; (3) at least two full years of boron sampling with grab sampling once per month both upstream of the outfall and at a downstream location sufficient to reflect mixing with the discharge; (4) boron sampling and flow monitoring must be conducted at the same time; and (5) a commitment to submit to the Plaintiffs periodic reporting of sampling results and flow monitoring.

27.      Defendant shall commence implementation of the approved boron sampling plan within 90 days of plan approval.  Within 90 days of completion of boron sampling, Defendant shall provide to EPA and PADEP a boron sampling report containing and analyzing all the results from the boron sampling.

**VII.      REPORTING REQUIREMENTS**

28.      Defendant shall submit the following reports:

a.      Within 30 Days after the end of each semi-annual period (i.e., by July 30 and January 30) and until termination of this Decree pursuant to **Section XVIII**, Defendant shall submit a semi-annual report to EPA and PADEP for the preceding semi-annual period that shall include: the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of

13

permit applications; operation and maintenance; and reports to state agencies. The first semi-annual report under this Paragraph is due on January 30, 2022.

b.      Each semi-annual report shall also include a description of any known non-compliance with the requirements of this Consent Decree, including non-compliance with any terms of applicable NPDES permits, and an explanation of the likely cause of the violation and of the remedial steps taken, or to be taken, to prevent or minimize the violation.  If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States and PADEP of such violation and its likely duration, in writing, within ten working Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by **Section IX** (Force Majeure).

29.      Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facilities, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and PADEP orally or by electronic transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

30.     All reports shall be submitted to the persons designated in **Section XIV** (Notices).

31.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

32.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

33.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act, the Clean Streams Law or their respective implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

34.     Any information provided pursuant to this Consent Decree may be used by the United States and PADEP in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.     STIPULATED PENALTIES

35.     Defendant shall be liable for stipulated penalties to the United States and PADEP for violations of this Consent Decree as specified below, unless excused under **Section IX** (Force

Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

36.     <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty required to be paid under **Section IV** (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $2,500 per Day for each Day that the payment is late.

37.     <u>General Compliance Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement contained in **Section V** (General Compliance Requirements) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 per Day | 1st through 14th Day |
| $500 per Day | 15th through 30th Day |
| $750 per Day | 31st Day and beyond |

38.     <u>Injunctive Relief Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement contained in **Section VI** (Injunctive Relief) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $1,500 | 15th through 30th day |
| $3,000 | 31st day and beyond |

39.     <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement contained in **Section VII** (Reporting Requirements) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 per Day | 1st through 14th Day |
| $750 per Day | 15th through 30th Day |

$1,000 per Day                                   31st Day and beyond

40.    Information Collection and Retention.  The following stipulated penalties shall

accrue per violation per Day for each violation of a requirement contained in **Section XI**

(Information Collection and Retention) of this Consent Decree:

Penalty Per Violation Per Day          Period of Noncompliance
$250 per Day                           1st through 14th Day
$500 per Day                           15th through 30th Day
$750 per Day                           31st Day and beyond


41.    Interim Springdale Landfill Discharge Limit Violations.  Upon the Date of

Lodging of this Consent Decree, West Penn shall comply with an interim monthly average limit

of 20 mg/l and an interim daily maximum limit of 40 mg/l for boron from Outfall 001 and shall

report as such in its DMR, pending completion of the Springdale Landfill Pipeline pursuant to

this Consent Decree.  After the Date of Lodging of this Consent Decree, and continuing until

operation and discharge pursuant to the New Springdale NPDES Permit from the newly

permitted final pipeline outfall, a stipulated penalty of $8,000 shall accrue for each violation of

the interim monthly average boron effluent limit of 20 mg/l, and a stipulated penalty of $8,000

shall accrue for each violation of the interim daily maximum boron effluent limit of 40 mg/l.

Upon the Date of Lodging of this Consent Decree, the March 28, 2008 Consent Order and

Agreement between West Penn and PADEP shall be terminated.

42.    Transfer Provisions. The following stipulated penalties shall accrue per violation

per Day for each violation of each of the requirements for the transfer of ownership or operation

contained in **Paragraph 4** of this Consent Decree:

Penalty Per Violation Per Day          Period of Noncompliance
$250 per Day                           1st through 14th Day
$500 per Day                           15th through 30th Day

17

$750 per Day                                    31st Day and beyond

43.     Except as provided in **Paragraph 45.a and b**, stipulated penalties under this

Section shall begin to accrue on the Day after performance is due or on the Day a violation

occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily

completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for

separate violations of this Consent Decree.

44.     Defendant shall pay stipulated penalties to the United States and PADEP within

30 Days of a written demand by either Plaintiff.  Defendant shall pay 50 percent of the total

stipulated penalty amount due to the United States and 50 percent to PADEP.  The Plaintiff

making a demand for payment of a stipulated penalty shall simultaneously send a copy of the

demand to the other Plaintiff.  Copies to EPA shall be sent via email to: (i) the U.S. EPA

Cincinnati Finance Office at CINWD_AcctsReceivable@epa.gov and (ii) the U.S. EPA Regional

Hearing Clerk at R3_Hearing_Clerk@epa.gov.

45.     Stipulated penalties shall continue to accrue during any Dispute Resolution

proceedings, as provided in **Paragraph 43**.

a.      Subject to **Paragraph 46**, if the dispute is resolved by agreement of the

Parties or by a decision of EPA or PADEP, as the case may be, that is not appealed to the Court,

Defendant shall pay accrued penalties determined to be owing, together with interest, to the

United States or PADEP, as the case may be, within 30 Days of the effective date of the

agreement or the receipt of EPA's or PADEP's decision or order.

b.      Subject to **Paragraph 46**, if the dispute is appealed to the Court and the

United States or PADEP prevails in whole or in part, Defendant shall pay all accrued penalties

determined by the Court to be owing, together with interest, within 60 Days of receiving the

Court's decision or order, except as provided in subparagraph c, below.

        c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

46.      Either Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

47.      <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date, the stipulated penalty provisions contained in **Paragraph 41** shall be retroactively enforceable for any violations that have occurred after Lodging of the Decree but prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

48.      Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by **Paragraph 9**, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.  Defendant shall pay stipulated penalties owing to PADEP in the manner set forth and with the confirmation notices required by **Paragraph 11**.

49.      If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or PADEP from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

50.      The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

51.	Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' and PADEP's exclusive remedy for violations of this Consent Decree.  Subject to the provisions of **Section XII** (Effect of Settlement/Reservation of Rights), the United States and PADEP expressly reserve the right to seek any other relief they respectively deem appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.	FORCE MAJEURE

52.	"Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

53.	If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic transmission to EPA and PADEP, within 72 hours of when Defendant first knew that the event might cause a delay.  Within fourteen Days thereafter,

Defendant shall provide in writing to EPA and PADEP an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

54.    If EPA, after a reasonable opportunity for review and comment by PADEP, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by PADEP, for such time as is necessary to complete those obligations and stipulated penalties shall not be due for such period. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

55.     If EPA, after a reasonable opportunity for review and comment by PADEP, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

56.     If Defendant elects to invoke the dispute resolution procedures set forth in **Section X** (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of **Paragraphs 52 and 53**. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to Plaintiffs and the Court.

## X.     DISPUTE RESOLUTION

57.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree. With respect to disputes over potential Stipulated Penalties under this Consent Decree, the United States, in its sole discretion, may withdraw from the dispute resolution process at any time, and allow PADEP to take the place of the United States in the dispute resolution process, by giving written notice to the other parties; in such case, the term United States in this Dispute Resolution section shall mean the United States or PADEP, as applicable. In the event of such a withdrawal,

all decisions by PADEP regarding stipulated penalties for that specific dispute shall be the final resolution of that dispute, subject to the opportunity for judicial review provided by **Paragraphs 61-64**.

58. <u>Informal Dispute Resolution</u>. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States, with a copy to PADEP, a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after a reasonable opportunity for review and comment by PADEP, shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

59. <u>Formal Dispute Resolution</u>. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States, with a copy to PADEP, a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

60. The United States, after a reasonable opportunity for review and comment by PADEP, shall serve its Statement of Position within 30 Days of receipt of Defendant's Statement of Position. The Statement of Position of the United States shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting

23

documentation relied upon by the United States.  The Statement of Position of the United States

shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute

in accordance with the following Paragraph.

61.     Defendant may seek judicial review of the dispute by filing with the Court and

serving on the United States, with a copy to PADEP, in accordance with **Section XIV** (Notices),

a motion requesting judicial resolution of the dispute.  The motion must be filed within ten (10)

Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.

The motion shall contain a written statement of Defendant's position on the matter in dispute,

including any supporting factual data, analysis, opinion, or documentation, and shall set forth the

relief requested and any schedule within which the dispute must be resolved for orderly

implementation of the Consent Decree.

62.     The United States, after a reasonable opportunity for review and comment by

PADEP, shall respond to Defendant's motion within the time period allowed by the Local Rules

of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local

Rules.

63.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review.  Except as

otherwise provided in this Consent Decree, in any dispute brought under **Paragraph 59**

pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules

or any other items requiring approval by EPA under this Consent Decree; the adequacy of the

performance of work undertaken pursuant to this Consent Decree; and all other disputes that are

accorded review on the administrative record under applicable principles of federal

administrative law, Defendant shall have the burden of demonstrating, based on the

administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under **Paragraph 59**, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the requirements of the Consent Decree.

64.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless the Parties agree to such an extension in writing, unless the Court issues an order extending such deadline, or unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in **Paragraph 43**.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in **Section VIII** (Stipulated Penalties).

## XI.     INFORMATION COLLECTION AND RETENTION

65.     The United States, PADEP, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Mingo Facility and/or the Springdale Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States or PADEP in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by

Defendant or its representatives, contractors, or consultants;

        d.      obtain non-privileged documentary evidence, including photographs and similar data; and,

        e.      assess Defendant's compliance with this Consent Decree.

66.     Upon request, Defendant shall provide EPA and PADEP or their authorized representatives splits of any samples taken by Defendant.  Upon request, EPA and PADEP shall provide Defendant splits of any samples taken by EPA or PADEP.

67.     Commencing on the Effective Date until three years after the termination of this Consent Decree, Defendant shall retain all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its possession or control, or that come into its possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or PADEP, Defendant shall provide copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph, and subject to the requirements of the following **Paragraph 68**.

68.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the Plaintiffs at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or PADEP, Defendant shall deliver any such non-privileged documents, records, or other information to EPA or PADEP.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client

privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information required to be created or generated by this Consent Decree shall be withheld on grounds of privilege.

69.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

70.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or PADEP pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

71.     This Consent Decree resolves the civil claims of the Plaintiffs for the violations alleged in the Complaint filed in this action.

72.     The United States and PADEP reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States or PADEP to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit

conditions. The United States and PADEP further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

73.     In any subsequent administrative or judicial proceeding initiated by the United States or PADEP for injunctive relief, civil penalties, other appropriate relief relating to the Mingo Facility, the Springdale Facility, or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or PADEP in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to **Paragraph 71**.

74.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and PADEP do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act or with any other provisions of federal, state, or local laws, regulations, or permits.

75.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or PADEP against any third parties, not party to this Consent Decree, nor does it

limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

76.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.     COSTS

77.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and PADEP shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty, or any stipulated penalties due but not paid by Defendant, and for which proper notice was provided pursuant to **Paragraph 44**.

## XIV.     NOTICES

78.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

| | |
|---|---|
| As to the United States by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-1-1-11894 |
| As to the United States by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-1-1-11894 |

| As to EPA (by electronic service only): | R3_ORC_Mailbox@epa.gov<br>Re: 3RC40, United States, et al., v West Penn Power Company (Dkt. Number)<br><br>and<br><br>Peter Gold<br>(215) 814-5236<br>Gold.peter@epa.gov |
|---|---|
| As to PADEP (by electronic service): | https://www.dep.pa.gov/DataandTools/Pages/Application-Form-Upload.aspx |
| As to PADEP (by mail): | Stacey Greenwald, Operations Section Chief, Clean Water<br>Pennsylvania Department of Environmental Protection<br>Southwest Region<br>400 Waterfront Drive<br>Pittsburgh, Pennsylvania 15222-4745<br>sgreenwald@pa.gov<br>(412) 442-4064 |
| As to Defendant: | James A. Meade, Esq.<br>FirstEnergy Service Company<br>West Penn Power Company<br>Corporate Counsel<br>800 Cabin Hill Drive<br>Greensburg, PA 15601<br>jmeade@firstenergycorp.com<br>Office: 724-838-6965 |

79.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

80.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, including electronic mail, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

81.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound upon the Date of Lodging to comply with obligations of Defendant specified in this Consent Decree as accruing upon the Date of Lodging.  In the event the United States and PADEP withdraw or withhold consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI.    RETENTION OF JURISDICTION

82.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to **Sections X and XVII**, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.    MODIFICATION

83.    The terms of this Consent Decree, including any attached appendices, except as expressly set forth therein, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

84.    Any disputes concerning modification of this Decree shall be resolved pursuant to **Section X** (Dispute Resolution); provided, however, that, instead of the burden of proof provided by **Paragraph 63,** the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.    TERMINATION

85.    After Defendant has completed the requirements of **Section V** (General Compliance Requirements), **Section VI** (Injunctive Relief), has thereafter maintained continuous satisfactory compliance with this Consent Decree and Defendant's NPDES Permits for the Mingo Facility and the Springdale Facility for a period of eighteen (18) months, and has complied with all other requirements of this Consent Decree and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States and PADEP a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

86.    Following receipt by the United States and PADEP of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States and PADEP agree that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

87.    If the United States and PADEP do not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under **Section X**.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

## XIX.    PUBLIC PARTICIPATION

88.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States and PADEP reserve the right to withdraw or withhold their consent if the comments regarding

the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States or PADEP has notified Defendant in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

89. Each undersigned representative of Defendant and PADEP and the Deputy Chief of the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

90. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail, including electronic mail, with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI. INTEGRATION

91. This Consent Decree and its attachments constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no

representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXII. FINAL JUDGMENT

92.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court on the claims of the United States and PADEP against Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII. APPENDICES

93.     The following Appendix is attached to and part of this Consent Decree: "**Appendix A**" is the Renewed Springdale NPDES Permit (No. PA0091740).


Dated and entered this __ day of _____, 2022


_____
UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. West Penn Power Company.*

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division

Date: 1/10/2022

ANDREW W. INGERSOLL, Bar No. 325420
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611
Tel: 202-514-1999
Fax: 202-514-0097
Email: andrew.ingersoll@usdoj.gov

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. West Penn Power Company.*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: _____

ADAM ORTIZ
Digitally signed by ADAM ORTIZ
Date: 2022.01.03 21:54:52
-05'00'

_____

ADAM ORTIZ
Regional Administrator
U.S. Environmental Protection Agency, Region III
Philadelphia, PA 19103-2029

Date: 12/22/21

CECIL RODRIGUES
Digitally signed by CECIL RODRIGUES
Date: 2021.12.22 11:53:48
-05'00'

_____

CECIL RODRIGUES
Regional Counsel
U.S. Environmental Protection Agency, Region III
Philadelphia, PA 19103-2029

Date: _____

DOUGLAS FRANKENTHALER
Digitally signed by DOUGLAS FRANKENTHALER
Date: 2021.12.10 17:20:22
-05'00'

_____

DOUGLAS FRANKENTHALER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
Philadelphia, PA 19103-2029

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. West Penn Power Company.*

FOR THE PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION:

Date: _____

CHRISTOPHER J. KRILEY, P.E.
Program Manager
Clean Water Program
Pa Department of Environmental Protection
400 Waterfront Drive
Pittsburgh, PA 15222-4745

Date: _____

MELANIE B. SEIGEL
Assistant Regional Counsel
Office of Chief Counsel
Pa Department of Environmental Protection
400 Waterfront Drive
Pittsburgh, PA 15222-4745

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. West Penn Power Company.*

FOR WEST PENN POWER COMPANY:

Date: 12/7/2021

JOHN D. REA
Regional President
West Penn Power Company
800 Cabin Hill Drive
Greensburg, PA 15601

Date: 12/7/2021

DONALD C. BLUEDORN II
MARK D. SHEPARD
GARY E. STEINBAUER
Babst Calland Clements & Zomnir, P.C.
Two Gateway Center
Pittsburgh, PA 15222
(412) 394-5400
dbluedorn@babstcalland.com

JAMES A. MEADE
FirstEnergy Service Company
West Penn Power Company
Corporate Counsel
800 Cabin Hill Drive
Greensburg, PA 15601
(724) 838-6965
jmeade@firstenergycorp.com