IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and the PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>   Plaintiffs,<br><br>  v.<br><br>WEST PENN POWER COMPANY,<br><br>   Defendant. | Civil Action No. 2:22-cv-00051-NR<br><br>MOTION TO ENTER [PROPOSED] CONSENT DECREE |

  The United States of America, on behalf of the Environmental Protection Agency ("EPA"), and the Pennsylvania Department of Environmental Protection ("PADEP") hereby move the Court to enter the Consent Decree lodged in this matter on January 11, 2022 (ECF No. 2-1) (Ex. 1). Under the proposed Consent Decree, West Penn Power Company ("West Penn") will implement measures intended to bring its Mingo closed coal ash landfill in Union Township, Washington County, and its Springdale closed coal ash landfill in Frazer Township, Allegheny County, into compliance with federal and state environmental statutes. West Penn will also pay a civil penalty of $610,000, to be evenly divided between the United States and PADEP. The proposed Consent Decree would resolve the Complaint filed on January 11, 2022 (ECF No. 1).

  After notice and opportunity for public comment, no comments have been received within the 30-day federal comment period. All parties to this action have signed the Consent Decree and, by so doing, Defendant consented to entry of the Consent Decree without further notice. Because this matter is unopposed, the United States and PADEP request it be deemed

1

submitted and ruled on without the need for a hearing.

**I.      BACKGROUND**

    **A.      West Penn's Landfills and the Complaint**

West Penn has owned or operated two landfills in Pennsylvania: the Mingo Landfill in Union Township, Washington County, and the Springdale Landfill in Frazer Township, Allegheny County. ECF 1 at ¶ 31. West Penn obtained NPDES permits to discharge pollutants from each landfill into nearby streams pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, and Section 307 of the Pennsylvania Clean Streams Law, 35 P.S. § 691.307. *Id.* ¶¶ 1, 32. The permits prohibited West Penn from discharging specified pollutants in excess of numerical average monthly limits. *Id.* ¶ 32. One such specified pollutant was boron. *Id.*

This case arises out of allegations that West Penn discharged boron from its two landfills in violation of its NPDES permit. *Id.* ¶¶ 40, 50. The Complaint alleges that on multiple occasions between at least May 2013 and August 2021, West Penn discharged boron from its landfills at levels exceeding the specified monthly limit. *Id.* ¶¶ 36, 40, 50. These allegations are based on data from monthly Discharge Monitoring Reports that West Penn submitted to EPA in accordance with its NPDES permit, and which West Penn has certified as accurate. *Id.* ¶¶ 41, 51. The Complaint alleges that each time West Penn exceeded the monthly limit on boron discharges, it violated its NPDES permit and by extension both the Clean Water Act and the Pennsylvania Clean Streams Law. *Id.* ¶¶ 42–43, 52.

    **B.      The Proposed Consent Decree**

Plaintiffs lodged the proposed Consent Decree with this Court on January 11, 2022. The Consent Decree would resolve liability for all past violations of West Penn as alleged in the Complaint. ECF 2-1 at ¶ 71. It imposes on West Penn a civil penalty payment of $610,000, split

evenly between the United States and PADEP, and mandates compliance with all applicable statutes, regulations, and permits. *Id.* ¶¶ 8, 13. It provides for injunctive relief, including the implementation of a boron sampling plan at the Mingo Landfill and construction of a new pipeline at the Springdale Landfill. *Id.* ¶¶ 21, 24. The Consent Decree also sets forth reporting requirements to facilitate compliance and stipulates penalties for compliance and reporting violations. *Id.* ¶¶ 28–29, 35.

## II. STANDARD OF REVIEW

A court should approve a consent decree if it is fair, reasonable, and consistent with the purposes that the underlying statutes are intended to serve. *See In Re Tutu Water Wells CERCLA Lit.*, 326 F.3d 201, 210 (3d Cir. 2003) ("*Tutu*"). The court should also consider whether the proposed agreement is consistent with the public interest. *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986). "[A] court should not later modify the decree by interposing terms not agreed to by the parties or not included in the language of the decree." *Harris v. City of Philadelphia*, 137 F.3d 209, 212 (3d Cir. 1998).

In reviewing a consent decree, a court should keep in mind "the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). The presumption is "in favor of voluntary settlement." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991). That presumption is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *Id.*; *see also United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 822 (3d Cir. 2000) (acknowledging "the deference the district court owes to EPA's expertise and to the law's policy of encouraging settlement"); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir.

3

1990) (noting that the policy of law favoring settlements "has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement").

## III. ARGUMENT

### A. The Consent Decree is Procedurally Fair

In assessing procedural fairness, a court should "look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Tutu*, 326 F.3d at 207 (quoting *Cannons Eng'g*, 899 F.2d at 86). Here, the settlement resulted from a negotiation process in which all Parties were represented by counsel, as evinced by the signature pages in the Consent Decree. The United States, PADEP, and West Penn together engaged in good faith, arms-length negotiations, which supports a finding that the settlement is procedurally fair. *See United States v. Oregon*, 913 F.2d at 581 (holding that consent decree is "presumptively valid" where it is the product of "good faith, arms-length negotiations"). The negotiations in this case demonstrate that the proposed settlement is not a "product of collusion," but rather a reflection of the efforts of all parties to reach a just and equitable resolution. *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991).

### B. The Proposed Consent Decree Is Substantively Fair and Reasonable

In assessing substantive fairness, courts should look to whether the settlement terms are "based on comparative fault and if liability is apportioned according to rational estimates of the harm each party has caused." *Se. Pa. Transp. Auth.*, 235 F.3d at 823; *see also Cannons Eng'g*, 899 F.2d at 87 (asking whether settlement is "based upon, and roughly correlated with, some acceptable measure of comparative fault"). Some courts have considered factors such as the strength of the government's case and the possible risks and transaction costs involved in

litigation. *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 680 (D.N.J. 1989). Here, the proposed Consent Decree requires West Penn to pay a reasonable civil penalty and take immediate action to bring its discharges into compliance with environmental laws while avoiding the costs and risks of continued litigation. The proposed Consent Decree is a product of the Parties' careful and informed assessment of the relative merits of each other's cases.

In assessing reasonableness, the most important criterion for the Court to consider is the Consent Decree's "likely effectiveness as a vehicle for cleansing the [environment]." *Akzo Coatings*, 949 F.2d at 1437. Here, the Consent Decree includes injunctive relief, reporting requirements, and stipulated penalties that are intended to bring West Penn's discharges into compliance with the Clean Water Act and the Pennsylvania Clean Streams Law, making it an effective vehicle for environmental protection.

### C. The Proposed Consent Decree Is Consistent with Statutory Objectives and Serves the Public Interest.

The goal of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Pennsylvania Clean Streams Law similarly seeks "to prevent further pollution of the waters of the Commonwealth" and "to reclaim and restore to a clean, unpolluted condition every stream in Pennsylvania that is presently polluted." 35 P.S. § 691.4(3). The Consent Decree directly advances these objectives through injunctive measures that will bring West Penn's discharges into compliance with permits issued pursuant to those statutes, thus reducing the impact of pollutant discharges from its landfills into nearby streams. Moreover, the Consent Decree decreases the likelihood that West Penn will commit future violations by imposing reporting requirements and providing for stipulated penalties in the case of noncompliance. These provisions further the environmental objectives of the Clean Water Act and the Pennsylvania Clean Streams Law.

Finally, the entry of the proposed Consent Decree will avoid litigation costs, which furthers the public interest by preserving judicial resources and the limited resources of the United States in its efforts to enforce the Clean Water Act and of PADEP in its efforts to enforce the Pennsylvania Clean Streams Law. Accordingly, the Consent Decree is procedurally and substantively fair, reasonable, consistent with statutory objectives, and in service of the public interest.

### D. No Comments Were Received and the Consent Decree is Ripe for Entry

Pursuant to 28 C.F.R. § 50.7, the United States posted notice of this proposed settlement in the Federal Register. 87 Fed. Reg. 2637, 2637–38 (Jan. 18, 2022). No comments were received, and the time for receiving comments has expired. The Consent Decree is now ripe for approval and entry. West Penn consented to entry without further notice. ECF 2-1 at ¶ 88.

### E. Entry of Final Judgment

Entry of the Consent Decree will constitute entry of final judgment in this matter. *Id.* ¶ 92.

## IV. CONCLUSION

The Consent Decree fully resolves the alleged violations in Plaintiffs' Complaint through compliance actions and requires payment of an appropriate civil penalty. Therefore, the Court should sign at page 34, and enter the lodged Consent Decree as a final judgment in this matter. Because the instant motion is unopposed, Plaintiffs request it be deemed submitted and ruled on without the need for a hearing.

///

///

///

Dated: March 08, 2022						Respectfully submitted,


						  /s/ Andrew W. Ingersoll
						ANDREW W. INGERSOLL, Bar No. 325420
						Trial Attorney
						Environmental Enforcement Section
						Environment and Natural Resources Division
						United States Department of Justice
						P.O. Box 7611
						Washington, D.C., 20044-7611
						Telephone: (202) 514-1999
						Fax: (202) 514-0097
						E-mail: andrew.ingersoll@usdoj.gov




						  /s/ Melanie B. Seigel
						MELANIE B. SEIGEL, Bar No. 315847
						Assistant Regional Counsel
						Office of Chief Counsel
						Pa Department of Environmental Protection
						400 Waterfront Drive
						Pittsburgh, PA 15222-4745
						E-mail: mseigel@pa.gov